CONWAY *v.* COURSEY.

Opinion delivered December 1, 1913.

1. LANDLORD AND TENANT—RIGHT OF LESSEE TO CUT TIMBER.—Where C. leased land to K., the lease containing merely an agreement for the rental and clearing of the land, such lease does not operate to convey title to the standing timber so that the lessee may sell it; but the title to the timber and right to remove it remains in the lessor. If the landlord does not remove it, the tenant may destroy only such timber as is necessary to clear the land. (Page 561.)

2. APPEAL AND ERROR—ERRONEOUS INSTRUCTION PREJUDICIAL ERROR.— Where an erroneous instruction is given, the cause will be reversed unless it clearly appears that the error was harmless. (Page 562.)

Appeal from Chicot Circuit Court; *J. R. Yerger,* Special Judge; reversed.

STATEMENT BY THE COURT.

Appellant, Francis H. Conway, filed a replevin suit before a justice of the peace, for the possession of one lot of saw logs on the yard at Indian Station, Chicot County, Arkansas, worth $295. He filed a replevin bond and obtained an order of delivery and took possession of the logs under it. Judgment was rendered in his favor at the trial by the justice of the peace and an appeal was taken by the appellee to the circuit court, and in the trial there the evidence was substantially as follows:

Appellant testified he owned 380 acres of land in Chicot County and that the logs replevined came off his land; that he went over his land and had the county surveyor to make an estimate of the timber cut and removed therefrom, and he found that some one had cut about three times as much timber as was embraced in this suit, and that all of the land was practically denuded of its timber. That he had never at any time sold any timber to any one, nor authorized any one to sell his timber, and that no timber had been disposed of except for the purpose of clearing the land. That he had never given Lewis Keith a written lease for any part of this land, and he had never authorized any one else to do so. That

the only leases which he ever made, or authorized, provided that the land should be cleared by deadening the timber, and that no right was given to remove or use any timber except for fence posts and to improve the place, and that no clearing was required to be done, except as it became necessary to put the land in cultivation, and that no authority was ever given to any one to sell any merchantable timber. Mr. Ward testified that he was appellant's representative in renting and clearing the land, but that he had never been given any authority to authorize any use of the timber except for clearing the land and improving it, and that he had received explicit directions from appellant that no timber should be sold, and witness stated that he had never sold any timber nor authorized the sale of any. He admitted, however, the execution of a certain lease which was offered in evidence, and which reads as follows:

"This contract entered into this 11th day of March, 1908, by and between Francis H. Conway, party of the first part, and Lewis Keith, party of the second part, witnesseth:

"Party of the first part agrees to rent party of the second part the John White tract of land, containing eighty-five acres cleared and timbered land, for the term of five years, for the sum of seventy-five 00/100 per annum, payable the 1st day of December, each year, 1908, 1909, 1910, 1911, 1912, out of first cotton.

"Party of the first part also agrees to allow party of the second part the privilege of clearing and cultivating all the land he can during the said terms, and agrees to furnish what wire and staples that may be necessary to fence said lands.

"Party of the second part agrees to put said land in good cultivating condition and keep all fences in good repair and put up all fences on good posts and on the ...... of said tract with no expense to party of the first part. Also agrees to clear at least forty acres of timbered lands in good cultivating condition during the times before mentioned.

"We, this 11th day of March, 1908, set our hands and seals.

"(Signed)   Francis H. Conway,
         "Per W. W. Ward, Agent.
"(Signed)   L. W. Keith.
"Witness:   (Signed) I. M. Worthington, Jr."

Lewis Keith testified that he owned a tract of land adjoining the Conway land which he had leased, and that he sold the timber on his own land for $150, and sufficient lumber with which to build a house on the Conway lease, with the understanding that enough timber should be cut and removed from the Conway lease to furnish the necessary lumber for building the house. Keith testified that appellee paid him the $150 and immediately commenced cutting and removing timber on the land leased by witness as well as on that owned by him. He further testified that he notified appellee that he had no authority to sell any timber on his lease and that he had not done so, and that he twice ordered the cutters and haulers off this lease, and that after he had done so the second time appellee came upon the land with a shotgun and announced his intention to cut the timber; whereupon witness notified Mr. Ward, who in turn notified the appellant, and this suit was immediately begun. Keith further testified that appellee offered to pay him $50 for the timber cut on this lease, but he declined to receive the money upon the ground that he had not sold the timber, nor been authorized to sell it. He further stated that he had never moved upon this lease nor had he cleared the land as his contract authorized him to do. And that when the controversy arose over the timber he abandoned his contract and made no attempt to clear the land.

Appellee admitted that he had cut and removed 30,000 feet of timber from this lease, but he stated that the other timber replevined came off of Keith's own land, and other lands on which he had bought the timber, but he denied that he cut any timber on appellant's land except from the Keith lease. He further testified that

66,000 feet of lumber had been taken from him under order of delivery and that only 30,000 feet of this had been taken from the Keith lease, and he testified that he paid Keith $150 in money and agreed to furnish him the lumber to build a house on the Conway land and for this consideration he was to have the timber on both Keith's land and lease; that he had offered Keith lumber to build his house with, but Keith declined to receive it, but appellee denied that he had offered to make any other payment to Keith. There was some other evidence which we think it unnecessary to set out.

The court gave various instructions and, and, among others, gave at appellee's request and over appellant's objection, instruction No. 4, which reads as follows:

"You are instructed that if you find from the evidence that W. W. Ward, acting as agent for plaintiff, leased to Lewis Keith the land from which the timber in controversy, or a part thereof, was cut, and plaintiff knew of the occupancy of Keith, under said lease and received rent under the terms thereof, and if you further find that the chief consideration for said lease, was the clearing and putting in a state of cultivation of forty acres of said land, the obligation to clear necessarily implied the removal of the timber therefrom; and if you further find that the said Keith in good faith, for the purpose of clearing and improving said land and complying with the terms of his lease, sold the timber off the land to be cleared to the defendant, your verdict will be for the defendant for the timber cut from the Keith land or its value."

The jury returned the following verdict, towit:

"We, the jury, find for the defendant for 36,000 feet of logs at $10 per thousand.

(Signed)        "J. R. Spraggins, Foreman."

Judgment was thereupon entered by the court against appellant, and the sureties on his bond, for 36,000 feet of logs if they can be found, or for the value with interest thereon from the date they were taken under

order of delivery issued by the justice. A motion for a new trial was overruled and an appeal prayed and granted.

*N. B. Scott, Armstrong Barrow* and *Cockrill & Armistead,* for appellant.

Instruction 4 was erroneous, because there was no testimony whatever upon which to base it. Moreover, if the lease had been ratified by Conway, though there is no evidence of such ratification, still the lease gave no authority to Keith to sell any timber off the land. 91 Ark. 280. An erroneous instruction is presumed to be injurious, where it is not shown that the error did not or could not prejudice the party against whom it was committed. 191 U. S. 334; 39 So. 277; 76 N. E. 400; 75 N. W. 650; 71 S. W. 116. Unless it clearly appears from the record that the error was harmless, such an instruction is cause for reversal. 69 Ark. 134; 76 N. W. (Ia.) 847; 70 Ark. 79; 59 Pac. 624.

SMITH, J., (after stating the facts). The court erred in giving the instructions set out for two reasons. In the first place, there was no evidence to submit to the jury that appellant ratified or confirmed the written lease introduced in the evidence. There was no evidence that appellant had any knowledge of it until after the timber had been cut and removed. And in the second place, the evidence was undisputed that appellant never at any time sold the timber nor authorized its sale. Indeed, the lease offered in evidence, and under which appellee claimed, is not a sale of the timber and does not purport to be. It is merely an agreement for the rental and clearing of lands, and such leases do not operate to convey title to the standing timber so that the tenant may sell it. In such contracts as the one here set out, the title to the timber and the right to remove it remains in the owner of the land. If the owner of the land does not remove the timber, the tenant has the right to destroy it as it becomes necessary to do so to clear the land; but such contracts convey no right to sell the merchantable

timber as such, and no right to destroy it except as it is necessary to do so to clear the land by deadening the timber or otherwise, which may of course be done if the landlord does not remove the timber in apt time. *Reichardt* v. *Howe,* 91 Ark. 280.

This instruction was therefore erroneous, and as it does not clearly appear from the records that it was harmless, the judgment must be reversed. *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 134; *Neel* v. *Brandon,* 70 Ark. 79.