BIG ROCK, INC., d/b/a Criss & Shaver Ready Mix
Concrete *v.* MISSOURI PACIFIC RAILROAD Company
and Robert Eubanks, Arkansas Insurance Commissioner

88-1                                                    749 S.W.2d 675

Supreme Court of Arkansas
Opinion delivered May 16, 1988

*Catlett, Stubblefield, Bonds & Fleming*, by: *Victor A. Fleming*, for appellant.

*Herschel H. Friday, Michael G. Thompson*, and *James C. Baker, Jr.*, for appellees.

TOM GLAZE, Justice. The appellee, Arkansas Insurance Commissioner (Commissioner), initiated this delinquency proceeding in the Pulaski County Circuit Court pursuant to Ark. Code Ann. § 23-68-103 (1987), requesting that the Commissioner be appointed ancillary receiver for the purpose of liquidating Northeastern Fire Insurance Company's (Northeastern's) business in Arkansas. Northeastern was a Pennsylvania com-

pany, and its sole asset in this state was a qualifying bond in the amount of $100,000.00. The appellant, Big Rock, Inc., and appellee, Missouri Pacific Railroad Company (MoPac), filed the only claims against Northeastern in the respective amounts of $47,500.00 and $147,738.62. Big Rock's claim was later reduced to $37,500.00, based on the fact that its policy coverage with Northeastern contained "retained limit" provision in the sum of $10,000.00.

Big Rock's and MoPac's claims were apportioned, upon a percentage basis, against the amount of Northeastern's total bond amount, Big Rock receiving $20,427.44 and MoPac getting $80,698.51.[1] By court order dated August 27, 1986, the parties were awarded their respective proportionate shares, exhausting all of Northeastern's funds in Arkansas. The court's order also terminated the ancillary receivership. On April 3, 1987, Big Rock filed its motion to modify the court's order, claiming Big Rock had obtained newly discovered evidence that showed it was entitled to $4,136.00 more than the trial court awarded. The trial court denied Big Rock's motion. On appeal, Big Rock argues two points, but we find neither requires reversal. Therefore, we affirm.

Big Rock cites ARCP Rule 60(c)(1) and (4), and argues that because it had discovered new evidence and had learned the Commissioner had committed constructive fraud, the trial court's order should be modified to direct an increase in Big Rock's award by the sum of $4,136.00 or, in the alternative, to grant Big Rock a new trial.

In support of its arguments, Big Rock submits that, after it filed its claim against Northeastern in proceedings in both Pennsylvania and Arkansas, Arkansas's Commissioner advised Big Rock that the "retained-limit" provision in its Northeastern policy was the equivalent of a "deductible," and relying on that representation, Big Rock believed its claim was worth only $37,500.00, rather than the $47,500.00 it originally claimed. The Pennsylvania Insurance Department also corrected its original

---

[1] The bond amount included accrued interest and the total amount was reduced by the Commissioner's expenses of $2,513.24 before determining MoPac's and Big Rock's shares. The percentage basis was calculated by determining the ratio of the claim of each party to the total of their claims.

evaluation of Big Rock's claim by reducing the amount to $37,500.00, and this reduced amount was subsequently accepted by Big Rock as its proportionate share of Northeastern's bond funds. Big Rock further argues that it did not possess a copy of the Northeastern policy at the time of the Commissioner's advice, and instead, had only a certificate of insurance, which only contained information reflecting the policy period, the liability limits and a reference that the limits were subject to a $10,000.00 "retained-limit" provision. Big Rock contends it never saw the actual insurance policy, which defined the meaning of "retained limit," until after the court issued its order in this cause. Big Rock asserts that it obtained a copy of the policy in discovery proceedings during a lawsuit Big Rock had filed against its insurance agent and broker. In that litigation, Big Rock alleged its broker had procured the Northeastern policy without notifying Big Rock that Northeastern was insolvent.

Big Rock's arguments fail for several reasons. First, Big Rock failed to show that it could not have discovered with reasonable diligence a copy of its Northeastern policy before or at the time of the trial. *See* ARCP Rule 60(c)(1). *See also Liggett* v. *Church of Nazarene*, 291 Ark. 298, 724 S.W.2d 170 (1987); *Ark. State Highway Comm.* v. *Owen*, 241 Ark. 1012, 411 S.W.2d 304 (1967) (wherein this court construed the meaning of newly discovered evidence under ARCP Rule 59(a)(7) and its predecessor law). Here, Big Rock acquired its policy in 1979, and the claim it asserts arose on or about January 10, 1985. Arkansas's Commissioner commenced these delinquency proceedings in November 1985, and Big Rock filed its claim in February 1986, more than six months before the trial court entered its order disbursing Northeastern's bond funds. The record is silent concerning when Big Rock initiated suit against its insurance broker and why Big Rock could not have obtained its policy from the broker before the trial court's August 27, 1986 order, which allowed the parties' claims. Based upon the facts before us, we are unable to say the trial court abused its discretion in denying Big Rock's motion based on its claim of newly discovered evidence under Rule 60(c)(1).

Nor can we agree that the trial court's August 27th order should be modified or set aside because of some claim of misrepresentation and constructive fraud on the part of Arkan-

sas's Commissioner. In its motion to modify, Big Rock never alleged that the Commissioner committed constructive fraud, nor did it specifically aver that the Commissioner made a misrepresentation upon which Big Rock reasonably relied and was misled. *See Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985); *Arkansas Valley Compress & Warehouse Co.* v. *Morgan*, 217 Ark. 161, 229 S.W.2d 133 (1950); ARCP Rule 9(b). Big Rock's failure to plead and to obtain the court's ruling on constructive fraud is, alone, sufficient reason that Big Rock cannot prevail on that theory on appeal. *See Ferguson* v. *City of Mountain Pine*, 278 Ark. 575, 647 S.W.2d 460 (1983); *Routen* v. *Van Duyse*, 240 Ark. 825, 402 S.W.2d 411 (1966).

Another reason Big Rock cannot prevail on this point is that it has failed to demonstrate that the Commissioner's advice, concerning the meaning of the term "retained limit," was either erroneous or actionable as fraud.[2] In this respect, Big Rock stated in its motion below that the Commissioner told Big Rock that a "retained limit" was "in the nature of a deductible." While the "retained-limit" provision in Northeastern's policy was not effectuated under the circumstances in this case, we find nothing wrong with the Commissioner's statement. Big Rock's claim against Northeastern arose because of a property-damage judgment obtained against Big Rock in the sum of $155,000.00. Hartford Insurance Company was Big Rock's primary carrier on this property-damage claim, but its policy limit was $100,000.00. Northeastern insured Big Rock for coverage in excess of the amount insured by Hartford. Northeastern's liability, under its policy terms, was limited to the net loss in excess of the coverage provided by Hartford, but if Hartford did not pay the limit of its policy, Northeastern was required to pay only that loss in excess of its "retained-limit" amount of $10,000.00. In other words, Northeastern would not be liable for the $10,000.00 amount, which would be in form and in fact a deductible amount.

In the situation here, Hartford did pay its policy limit, and as

---

[2] No one argues whether the alleged constructive fraud on the Commissioner's part was the type practiced by a party to obtain the judgment. *See* ARCP Rule 60(c)(4); *Davis* v. *Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987). Because we uphold the trial court's ruling on other grounds, we deem it unnecessary to reach or discuss this issue.

a consequence, the "retained-limit" provision in Northeastern's policy was never effectuated. Even so, we find nothing in the record that contradicts the Commissioner's view that a "retained limit" was in the nature of a deductible — which, we add, was also the view shared by the Pennsylvania Insurance Department.

Because we believe the trial court was correct in denying Big Rock's motion to modify, we affirm.